EL PUEBLO DE PUERTO RICO, apelado, *v.* OSVALDO MEDINA LUGO, acusado y apelante.

*Número:* CR-87-49          *Resuelto:* 29 de junio de 1990

*Enrique Rivera Mendoza, Carmen Ana Rodríguez Maldonado y Cándida Valdespino,* abogados del apelante; *Norma Cotti Cruz, Subprocuradora General,* y *Josefa A. Román García, Procuradora General Auxiliar,* abogadas de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El apelante Osvaldo Medina Lugo, luego de ser declarado culpable y convicto del delito de fuga[1] por el Jurado que intervino en el proceso que se le celebrara ante el Tribunal Superior de Puerto Rico, Sala de Humacao, fue sentenciado a sufrir una pena de presidio de quince (15) años,[2] a ser cumplida la misma en *forma consecutiva* con cualquier otra sentencia que en dicho momento pesara sobre su persona.

En el recurso de apelación que ante este Tribunal oportunamente radicara, le imputa al foro de instancia la supuesta comisión de dos errores, a saber:

1. Erró el juzgador de los hechos al emitir un veredicto de culpabilidad cuando la prueba desfilada estableció un estado de necesidad e intimidación que obligó al apelante a evadirse de la institución.

2. Cometió grave error de derecho el Honorable Tribunal, al leerle al jurado las convicciones anteriores del apelante, no obstante

[1] Art. 232 del vigente Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4428.

[2] Conforme surge de la "minuta" que recoge los procedimientos acaecidos a nivel de instancia el día 4 de noviembre de 1986, el Ministerio Público "enmendó" en corte abierta el pliego acusatorio radicado con el propósito de alegar "reincidencia" por razón de haber sido convicto el apelante, con anterioridad a la comisión de los hechos que se le imputaban, del delito —entre otros— de fuga. Art. 232 del Código Penal, ante.

haberse aceptadas [sic] por la defensa y estipuladas las mismas en ausencia del jurado. Alegato del apelante, pág. 11.

## I

La prueba de cargo demostró más allá de duda razonable que el apelante Medina Lugo —quien hasta el día 20 de febrero de 1986 se encontraba extinguiendo en la *Cárcel de Guayama* varias condenas que le habían sido impuestas al ser encontrado culpable del delito de robo y otros delitos relacionados— arrivó en dicho día, en traslado, al *Campamento Penal Punta Lima*,(3) de donde se evadió, en unión a otros tres reclusos, el día 25 de febrero de 1986; esto es, a los cinco días de haber allí ingresado. Días más tarde, y en atención a unas gestiones realizadas por un familiar suyo con un ejecutivo de la Administración de Corrección, el apelante se entregó voluntariamente a personal de dicha dependencia gubernamental.

Conforme surge de los señalamientos de error antes transcritos, el apelante realmente no cuestiona el hecho de que efectivamente él se encontrara *legalmente bajo custodia* en el Campamento Punta Lima el día 25 de febrero de 1986; *ni* el hecho de que él *efectivamente se evadiera* de dicha institución penal; *como tampoco* cuestiona la *suficiencia de la prueba de cargo* a esos efectos presentada por el Estado.

## II

El apelante, mediante su primer señalamiento de error, *alega* que la prueba de defensa que él presentara durante el juicio celebrado —la cual, obviamente, no fue creída por los señores del Jurado— demuestra que su fuga del Campamento Punta Lima se debió a amenazas de recibir grave daño corporal que él había recibido de parte de funcionarios de la Administración de Corrección; esto es, a "un estado de necesidad", lo cual lo exonera de la

---

(3) Localizado el mismo en el pueblo de Naguabo, Puerto Rico.

comisión del delito que se le imputara. En otras palabras, el apelante sostiene que a la situación de hechos ante nuestra consideración le aplican las disposiciones de los Arts. 23 y 25 del Código Penal de Puerto Rico, 33 L.P.R.A. secs. 3096 y 3098.(4) No tiene razón.

Hace más de un siglo el Tribunal Supremo de Estados Unidos, en *United States v. Kirby*, 74 U.S. 482, 487 (1868), señaló, en relación a un convicto que escapó de la prisión debido a un fuego, que éste no debía ser responsable ante la ley: "he is not to be hanged because he would not stay to be burnt." Bajo este razonamiento varios tribunales comenzaron a condonar la fuga de un convicto cuando éste se veía en *la necesidad de escapar* ante la inminencia de un peligro en la prisión. Véanse: T.J. Goger, *Duress, Necessity or Conditions of Confinement as Justification for Escape from Prison*, 69 A.L.R.3d 678 (1976); Gardner, *The Defense of Necessity and The Right to Escape from Prison*, 49 S. Cal. L. Rev. 110 (1975); *Wharton's, Criminal Law* Sec. 673 (14ta ed. 1981).

A tenor con este desarrollo doctrinal, el Tribunal Supremo de Estados Unidos, en *United States v. Bailey*, 444 U.S. 394 (1980), reconoció la disponibilidad de las defensas de intimidación y estado de necesidad en casos de fuga y estableció los requisitos necesarios para que un convicto pudiera invocarlas favorable-

---

(4) El Art. 23 del Código Penal, 33 L.P.R.A. sec. 3096, define así la defensa del estado de necesidad:

"No incurre en responsabilidad el que para proteger cualquier derecho propio o ajeno de un peligro inminente, por él no provocado y de otra manera inevitable causa un daño en los bienes jurídicos de otro siempre que no haya desproporción entre el daño causado y el daño que se evita.

"Esta eximente no beneficiará a quien por razón de su cargo, oficio o actividad tiene la obligación de afrontar el riesgo y sus consecuencias."

El Art. 25 (33 L.P.R.A. sec. 3098), trata de la defensa de intimidación:

"No incurre en responsabilidad el que obra compelido por intimidación o violencia.

"a) Por la amenaza de un peligro grave e inminente siempre que exita racional proporcionalidad entre el daño causado y el amenazado; o

"b) Por una fuerza física irresistible.

"El concepto de violencia en esta sección comprende también el empleo de medios hipnóticos, sustancias narcóticas, deprimentes o estimulantes, u otros medios, o sustancias similares.

"En los casos previstos en esta sección será responsable del hecho delictuoso el que haya compelido a realizarlo."

mente. Los criterios adoptados en *United States v. Bailey*, ante, han sido incorporados en numerosas jurisdicciones. Véanse: *State v. Garafola*, 545 A.2d 257 (N.J. Sup. L. 1988); *Buckley v. City of Falls Church*, 371 S.E.2d 827 (Va. App. 1988); *Davis v. State*, 763 P.2d 109 (Okla. Cr. 1988); *State v. Martínez*, 781 P.2d 306 (N.W. App. 1989); *U.S. v. Shakur*, 817 F.2d 189, 199 (2do Cir. 1987); *United States v. Gant*, 691 F.2d 1159, 1161 (5to Cir. 1982); *United States v. Snow*, 670 F.2d 749 (7mo Cir. 1982); *United States v. Williams*, 791 F.2d 1383, 1388 (9no Cir. 1986).

En *Pueblo v. Morales Roque*, 113 D.P.R. 876 (1983), este Tribunal se enfrentó, por primera ocasión, a la defensa de "estado de necesidad" en relación con una acusación por el delito de fuga. En dicho caso, el allí apelante, mientras se encontraba cumpliendo una condena por delito grave, se evadió de una institución penal, trasladándose a Estados Unidos, donde fue arrestado tres años más tarde. Durante el juicio que se le celebrara —por tribunal de derecho— alegó que semanas antes de evadirse, fue víctima en la institución penal de un atentado de asesinato por otro recluso, quien al no lograrlo manifestó lo mataría en el futuro. Ello lo forzó, según su declaración, a evadirse de la institución al no lograr comunicación, y cooperación, de las autoridades de la institución.

■ Luego de hacer un recuento de la evolución de la doctrina pertinente a la materia, *señalamos* en el citado caso de *Pueblo v. Morales Roque*, ante, que el Tribunal Supremo de Estados Unidos, en *United States v. Bailey*, ante, había establecido, por decisión mayoritaria, que las defensas de intimidación y estado de necesidad *son invocables en casos de fuga si se cumple con tres requisitos, a saber*: (1) el evadido debe probar *la inminencia* de la amenaza; (2) debe probar, asimismo, que su fuga era *la única alternativa razonable* disponible, y (3) debe justificar también *la continuación de su estado de fuga.*[5]

---

[5] Antes de que el Tribunal Supremo federal resolviera el caso de *United States v. Bailey*, 444 U.S. 394 (1980), otras jurisdicciones estatales habían exigido la concurrencia de

Expresamos, en adición, en el mencionado caso de *Pueblo v. Morales Roque*, ante, pág. 881, que la diferencia fundamental que separaba a los Jueces de dicho Tribunal que suscribieron la opinión mayoritaria en el caso de *United States v. Bailey*, ante, de los Jueces disidentes, era que los primeros entendían que "antes de poder reclamar instrucciones al Jurado sobre las referidas defensas, el fugado tiene que demostrar que hizo un esfuerzo *bona fide* por entregarse o retornar a custodia tan pronto como la intimidación o el estado de necesidad perdió su fuerza coercitiva", mientras que la Minoría sostenía que "le correspondía al Jurado determinar si las condiciones existentes justificaban la ausencia continuada del penado".

█ Luego de señalar lo antes reseñado, este Tribunal, en el citado caso de *Pueblo v. Morales Roque*, pág. 882, expresó que:

> Resolvemos que la defensa de intimidación *es invocable en Puerto Rico* en casos de fuga *bajo determinadas condiciones*. Ya que el caso de autos se ventiló ante tribunal de derecho, es improcedente que nos pronunciemos aquí sobre el papel del Jurado en este tipo de situación. Basta con señalar que el apelante en esta causa no presentó prueba de ningún género para justificar la continuación de su estado de fuga por tres años, hasta el momento de su arresto. La defensa de intimidación se desploma en tales circunstancias. (Énfasis suplido.)

Como podemos notar, aun cuando establecimos, de manera incuestionable, que un recluso que se evade de una institución penal y permanece evadido por un *período prolongado* de tiempo *no* puede reclamar con éxito, en el proceso que se le celebre por el delito de fuga, la defensa de intimidación o estado de necesidad, *no* especificamos, en el citado caso de *Pueblo v. Morales Roque*,

---

cinco (5) requisitos o condiciones para que se pudiera invocar la defensa de intimidación o estado de necesidad en un caso de fuga, a saber: (1) el prisionero tenía que enfrentarse a una amenaza específica de muerte, ataque sexual forzado o daño sustancial corporal en el futuro inmediato; (2) no había tiempo para quejarse a las autoridades o existía un historial de quejas inútiles; (3) no había tiempo u ocasión de acudir a los tribunales; (4) no había prueba del empleo de violencia contra el personal de la institución penal u otros terceros, y (5) el prisionero se presentaba a las autoridades debidas tan pronto estaba a salvo de la amenaza inmediata. Véase *People v. Lovercamp*, 118 Cal. Rptr. 110 (1975).

ante, cuáles eran las "determinadas condiciones" bajo las cuales un acusado del delito de fuga puede exitosamente invocar en nuestra jurisdicción la "defensa de intimidación" en un caso donde se le imputa haberse evadido de una institución penal.

Ratificamos en el día de hoy lo resuelto en el antes mencionado caso de *Pueblo v. Morales Roque*, a los efectos de que la defensa de intimidación es invocable en nuestra jurisdicción, en procesos criminales donde se le impute a un recluso haber violado las disposiciones del Art. 232 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4428. Resolvemos afirmativamente, en adición, que el imputado de delito viene en la obligación de presentar prueba respecto a, cuando menos, los tres requisitos exigidos por el caso de *United States v. Bailey*, ante.[6] En cuanto al punto que dividió a los integrantes del Tribunal Supremo federal en el caso de *United States v. Bailey*, ante —esto es, si el imputado de delito en un caso por jurado tiene o no que demostrar que "hizo un esfuerzo *bona fide* por entregarse o retornar a custodia tan pronto como la intimidación o el estado de necesidad perdió su fuerza coercitiva" (*Pueblo v. Morales Roque*, ante, pág. 881)— somos del criterio que el mismo *está inmerso en el tercero de los requisitos*, esto es, que el imputado debe justificar *la continuación* de su estado de fuga; razón por la cual consideramos innecesario expresarnos respecto a dicha controversia.

A la luz de lo antes expuesto, resulta obvio que en el caso ante nuestra consideración el apelante Medina Lugo no estableció, en forma satisfactoria, los tres requisitos antes mencionados. Conforme el testimonio que él prestara durante el proceso que se celebrara a nivel de instancia, las amenazas "serias" a su vida de que *alegadamente* había sido objeto le fueron *supuestamente* hechas por personal de la Administración de Corrección *mientras él se encontraba recluido en la Cárcel de Guayama*, y no en el Campamento Penal Punta Lima de donde se evadió, lo que elimina de raíz el primero de los tres requisitos. Por otro lado, el

---

(6)   Somos del criterio que los cinco requisitos exigidos en otras jurisdicciones —enunciados en el esc. 5, ante— son excesivamente gravosos.

apelante tampoco demostró que el evadirse era su única alternativa, incumpliendo así con el segundo de los requisitos exigidos. Únicamente reportó las alegadas amenazas, por carta, a varios políticos y a una organización sobre derechos civiles en Estados Unidos. En otras palabras, no le dio notificación ni oportunidad alguna a las autoridades locales correspondientes para que éstas pudieran actuar al respecto. Por último, a pesar de que el apelante no estuvo evadido por un período prolongado de tiempo, éste tampoco justificó *la continuación* de su estado de fuga. Conforme su testimonio, estuvo "paseando" por varios pueblos de la Isla, sosteniendo relaciones amorosas con varias amigas.

### III

Mediante su segundo señalamiento de error, el apelante Medina Lugo le imputa al foro de instancia haber errado "al leerle al jurado [sus] convicciones anteriores" (Alegato del apelante, pág. 11) no obstante haberse aceptado y estipulado éstas por la defensa en ausencia del Jurado.

El señalamiento de error se refiere al hecho de que el tribunal de instancia permitió que fuera a conocimiento del Jurado las convicciones por las cuales había sido anteriormente convicto el apelante *y que precisamente eran la causa de estar recluido en una institución penal al momento de evadirse de la misma.*[7]

De entrada debe señalarse que, en una acusación en que se le imputa a una persona haber violado las disposiciones del Art. 232 del Código Penal de Puerto Rico, ante, esto es, haberse *evadido* mientras se encontraba *legalmente recluido* en una institución penal extinguiendo sentencias que le habían sido impuestas, *dichas convicciones anteriores forman parte integrante, y constituyen un elemento necesario, del delito de fuga que el Estado viene no sólo en la obligación de alegar en el pliego*

---

[7] Dichas convicciones se referían a los siguientes casos: Robo y Apropiación Ilegal Agravada; Tentativa de Homicidio; Infracción a la Ley de Sustancias Controladas de P.R., e infracción al Art. 232, ante, del Código Penal (fuga).

*acusatorio sino que tiene que probar durante el juicio como cualquier otro elemento de dicho delito.* Véanse: Regla 48 de las Reglas de Procedimiento Criminal de 1963 (34 L.P.R.A. Ap. IV); *Rivera v. Delgado,* 82 D.P.R. 692, 694–695 (1961). Es por ello que, *de ordinario y como regla general, no* puede constituir error que cause la revocación de una convicción por el delito de fuga el hecho de que el juzgador de los hechos haya advenido en conocimiento de dicha información.

■ Ahora bien, no hay duda que la información sobre esas convicciones puede influenciar, o impresionar, indebidamente a los señores del Jurado; sobre todo, cuando se trata de delitos graves que resultan, por su naturaleza, repulsivos al ciudadano común y corriente. Es por ello que, en situaciones en que la defensa *acepta* que el acusado efectivamente fue convicto por esos delitos y que en consecuencia se encontraba, al momento de evadirse, legalmente bajo custodia, somos del criterio que el tribunal debe evitar *—al igual que en las situaciones en que se alega reincidencia por el Estado y el acusado acepta haber sido efectivamente convicto anteriormente—*(8) que la información sobre las convicciones pase al Jurado. Simplemente puede informarles que el acusado ha sido convicto por "X" delitos graves, situación que él acepta, y que en consecuencia se entiende probado el hecho de que él efectivamente se encontraba bajo custodia legal al momento que el Estado alega que él se evadió de la institución penal. Por ese medio se garantiza tanto el derecho del Estado a probar su caso como el derecho a un juicio justo e imparcial de parte del acusado.

En el presente caso, como hemos visto, el apelante alega que, no obstante él haber aceptado dichas convicciones, el tribunal permitió que dicha información pasara al Jurado. No tiene razón. Aparte del hecho que dicho planteamiento es uno de "primera impresión", por lo que el tribunal de instancia carecía de guías al efecto al momento de la celebración del juicio a nivel de instancia,

---

(8) Véanse: Regla 68 de las Reglas de Procedimiento Criminal de 1963 (34 L.P.R.A. Ap. IV); *Rivera Rivera v. Jefe Penitenciaría,* 99 D.P.R. 81, 82–84 (1970); *Pueblo v. Aponte González,* 83 D.P.R. 511, 517 (1961).

surge de la exposición narrativa de la prueba[9] que la representación legal de la defensa no sólo aceptó las convicciones previas *sino que estipuló la admisibilidad en evidencia de las referidas convicciones.*[10]

Siendo ello así y surgiendo de un análisis sereno y desapasionado de la prueba que *no* existe razón alguna para intervenir, a nivel apelativo, con la apreciación y adjudicación que de la prueba presentada hizo el juzgador de los hechos, *Pueblo v. Cabán Torres,* 117 D.P.R. 645 (1986), se deberá dictar sentencia confirmatoria.

La Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Hernández Denton concurren con el resultado sin opinión escrita.

---

[9]   Dicha exposición narrativa de la prueba fue preparada por la defensa y certificada como correcta por el foro de instancia.

[10]   Véase pág. 1 de la Exposición Narrativa de la Prueba.